UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :

MARLENE SEYBOLD, IRA derivatively on   :
behalf of ABN Amro Holdings, N.V.,     :
                                         :     06 Civ. 772 (DLC)

                       Plaintiff,   :

                                         :     <u>OPINION AND ORDER</u>

               -v-                     :

RIJKMAN GROENINK, A.A. LOUDON, ARTHUR   :
C. MARTINEZ, A. BURGMANS, D.R.J BARON   :
DE ROTHSCHILD, L.S. GROENMAN, T.A.     :
MAAS-DE BROUWER, M.V. PRATINI DE      :
MORAES, P. SCARONI, LORD SHARMAN OF    :
REDLYNCH, A.A. OLIJSLAGER, ROB F. VAN   :
DEN BERGH, ANTHONY RUYS, WILCO JISKOOT,  :
TOM DE SWAAN, JOOST KUIPER, DOLF      :
COLLEE, and HUGH SCOTT-BARRETT,      :
                                         :

                     Defendants,   :

                                         :

               -and-                  :

ABN AMRO HOLDINGS, N.V.,           :

               Nominal Defendant.   :

                                         :
----------------------------------------X

Appearances:

For Plaintiff:
Joseph H. Weiss
James E. Tullman
Joshua M. Rubin
Weiss & Lurie
551 Fifth Avenue
New York, NY 10176

For Defendants:
Thomas A. Arena
Kevin M. Ashby
Alyssa A. Rower
Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza

New York, NY 10005

DENISE COTE, District Judge:

This litigation raises the issue of whether an American holder of American Depository Receipts (ADRs)[1] in a bank incorporated in the Netherlands has standing to bring a shareholder derivative action against the corporation's directors for common law claims of breach of fiduciary duty and indemnification.  It arises in the aftermath of the corporation's deficient compliance with federal anti-money laundering laws, deficiencies which have resulted in the corporation paying hundreds of millions of dollars to federal authorities.  Finding that in this diversity action[2] New York choice of law rules require that the law of the Netherlands

---

[1] In order for a foreign corporation to trade on an American stock exchange, the foreign corporation must issue and deposit American Depository Shares ("ADSs") with an American financial institution.  E.ON v. Acciona, No. 06 Civ. 8720 (DLC), 2006 WL 3357261, at *1 n.2 (S.D.N.Y. Nov. 20, 2006).  The depository institution then issues American Depository Receipts ("ADRs") to the beneficial owners of the ADSs, who may sell the ADSs on American securities exchanges.  Id.  The ADR system is the means by which American investors hold and trade equity interests in foreign companies.  Id.

[2] While the complaint does not explicitly state that subject matter jurisdiction is based on diversity, plaintiff has not offered any other possible ground for jurisdiction.  The requirements of diversity are met, however, since the plaintiff is a New Jersey resident, all of the defendants with the exception of two are citizens of foreign countries and reside abroad, defendant Martinez is a citizen of the United States and resides in either Illinois or Connecticut, defendant van den Bergh is a citizen of the Netherlands and resides in Connecticut, and the amount in controversy far exceeds $75,000.

determine whether plaintiff has standing to bring a derivative claim, the defendants' motion to dismiss is granted.

Plaintiff Marlene Seybold is a New Jersey resident and holder of 400 ADRs of ABN Amro Holdings, N.V. ("ABN"), a prominent international corporation offering banking services and financial products worldwide.  The defendants are eighteen individuals who are directors and/or senior officers of ABN, and who served in this capacity during the period when ABN failed to comply with federal anti-money laundering statutes.[3]  Plaintiff has brought a derivative action on behalf of ABN against all of the individual defendants for breach of fiduciary duty and/or aiding and abetting the breach of fiduciary duty, and for indemnification for losses incurred and to be incurred by the corporation as a result of defendants' failures, which exposed ABN to liability to regulators.  Seybold seeks disgorgement of any incentive-based or equity-based compensation received by the

---

[3] Defendant Rijkman Groenink is the chairman of ABN's Managing Board.  Defendant Tom de Swaan is ABN's chief financial officer.  Defendant Hugh Scott-Barrett serves as the company's chief operating officer.  These individuals, along with defendants Wilco Jiskoot, Joost Kuiper, and Dolf Collee, are members of the ABN Managing Board.  Defendants A.A. Loudon and Arthur C. Martinez are the chairman and vice chairman respectively of the ABN Supervisory Board.  Martinez also serves as the head of the audit committee of the Supervisory Board.  Defendants A. Burgmans, D.R.J. Baron de Rothschild, L.S. Groenman, T.A. Maas-de Brouwer, M.V. Pratini de Moraes, P. Scaroni, Lord Sharman of Redlynch, A.A. Olijslager, Rob F. Van den Bergh, and Anthony Ruys are members of the ABN Supervisory Board.

directors during the relevant time period pursuant to the
Sarbanes Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745
(codified in various sections of 11, 15, 18, 28, and 29 of the
U.S.C.) and common law.[4]  She also seeks a judgment (1) declaring
that the defendants breached their fiduciary duties, (2)
requiring them to pay ABN the amounts it was damaged or will be
damaged because of their conduct, (3) obligating the defendants
to remit to ABN all of their salaries and other compensation
received during the periods when they breached their duties, (4)
requiring corrective measures and restraint from future
wrongdoing, and (5) attorney's fees, expert fees, and other
reasonable costs and expenses.


BACKGROUND

     The following facts are taken from the complaint in the
instant lawsuit and the parties' submissions on the defendants'
motion to dismiss.  The defendants' submissions include an
expert declaration on the law of the Netherlands by Maarten J.
Kroeze, Professor of Company Law, Erasmus University, Rotterdam;
a declaration by Hendrik Willem Nagtglas Versteeg, secretary to
the Supervisory and Managing Boards of ABN; plaintiff's June

---

[4] The plaintiff does not specify in her complaint the provision
of the Sarbanes-Oxley Act that she alleges prohibited the
defendants' conduct.

2006 demand to the ABN Board of Directors; and the defendants'
July 28 letter communicating the ABN Board of Director's
response.  The plaintiff's submissions include the July 2004
Agreement between ABN and American federal and state regulators
on which the complaint relies.

A) ABN's Non-Compliance with Federal Anti-Money Laundering
Statutes

     ABN is a foreign bank, as defined in Section 3101(7) of the
International Banking Act, 12 U.S.C. 3101(7), that is
incorporated in Amsterdam, the Netherlands as an "N.V.", a
public company with limited liability.  It maintains a New York
branch ("New York Branch") through which it offers banking
services and financial products.  Since 2003, ABN has come under
investigation by federal and state regulatory authorities for
deficiencies in its internal controls to ensure compliance with
banking law and federal anti-money laundering laws, and for
alleged violations of United States sanctions laws arising from
transactions originating in the bank's office in Dubai, United
Arab Emirates.

     In July 2003, New York state regulators alerted ABN that
transactions involving Eastern Europe and limited liability
companies located in the United States were "suspect."  ABN's
subsequent investigation discovered billions of dollars in

suspect shell-company transactions.  As a result, the company terminated its relationship with certain client banks in Russia, Cyprus and the former Soviet republics.  It also hired the U.S. law firm Morrison & Foerster to review the bank's handling of the issue.

B) The Agreement

In July 2004, ABN and its New York Branch entered into a publicly disclosed settlement agreement (the "Agreement") with the Federal Reserve Bank of Chicago, the Federal Reserve Bank of New York, the State of Illinois Department of Financial and Professional Regulation, and the New York State Banking Department.  The purpose of this Agreement was to "address deficiencies relating to compliance with applicable federal and state laws, rules, and regulations relating to anti-money laundering policies and procedures."  The Agreement required ABN to, among other things, allow the independent testing and audit of the New York Branch's anti-money laundering compliance, train relevant personnel, and institute a diligence program to identify and report suspicious transactions.  The Agreement did not state that there had been a finding of money laundering.

C) Order to Destroy

In October 2004, while the chairman of ABN's Managing Board, defendant Rijkman Groenink, met with Federal Reserve Bank regulators in New York over the Eastern European transactions, he received a fax at the Ritz-Carlton Hotel concerning the results of an internal ABN investigation regarding Iran-Libya transactions.  Groenink allegedly ordered his aides to destroy the report and to stop sending sensitive documents to the United States.  ABN internal investigators later concluded that he rescinded the orders.  ABN's in-house counsel reported the incident to Sullivan & Cromwell, the company's principal outside counsel.

D) Dubai Transaction

Notwithstanding the July 2004 Agreement, federal regulators found ABN to have violated U.S. anti-money laundering laws in December 2005.  ABN admitted that a "handful" of officers falsely filed paperwork identifying money flows from its Dubai Branch to the New York Branch as generic interbank transactions when the transfers were destined for companies doing business with Iran and Libya in violation of U.S. sanctions against these countries.  ABN conducted an internal investigation and entered into a settlement with U.S. and Dutch regulators calling for $80 million in fines addressing the failure to report suspicious

transactions and for conducting illegal business with Iran and
Libya.  ABN also committed to spending over $250 million
annually to retrain its staff, realign its management structure,
and strengthen technological safeguards.


E) The Netherlands' Company Law

    According to Professor Kroeze, corporations in the
Netherlands must be governed by two separate bodies: a Managing
Board and a Supervisory Board.  Managing Board members are
responsible for the management and business affairs of the
company and owe fiduciary duties to the corporation, not to the
corporation's shareholders.  These fiduciary duties include a
duty to the company to "properly perform" management tasks.
Supervisory Board members serve in an advisory role to oversee
the Managing Board.  Members of both boards "have a duty of good
faith which requires them to behave reasonably and equitably
toward one another."

    As a public company with limited liability, ABN is subject
to the rules set forth in the Dutch Civil Code (the "Code").
The Code provides at least three mechanisms to commence suits on
behalf of the corporation for injures sustained as a result of
the breach of duties by members of the Managing or Supervisory
Boards.  First, it authorizes the Managing Board to initiate
legal proceedings on behalf of the company, including

proceedings for mismanagement against current or former members
of either board.  Second, the Code also permits "a Managing
Board to delegate its representative authority to one or more
directors, or a non-director signatory, acting individually or
in concert."  ABN's Articles of Association delegate the
authority to represent the company as follows:

> 1.    The authority to represent the Company shall either
>       reside with two members of the Managing Board acting
>       jointly, or with one member of the Managing Board
>       and one duly authorized signatory acting jointly.
>
> 2.    The Company may also be represented by authorized
>       signatories with due observance of any restrictions
>       imposed upon their representative authority.  The
>       Managing Board shall decide on their authority,
>       their job title and the terms of appointment, on the
>       understanding that the title of Senior Executive
>       Vice President may only be granted in consultation
>       with the Supervisory Board.

(Emphasis supplied.)  ABN's Articles of Association do not
generally permit an individual shareholder or group of
shareholders to commence a legal action on behalf of the
corporation to obtain damages for alleged injuries to the
corporation.  Third, the "[p]revailing opinion among Dutch legal
scholars" is that under the Code, the Supervisory Board may also
initiate legal proceedings against Managing Board members on
behalf of the corporation when there are conflicts of interest
between these individuals and the company, absent any contrary
provision in the corporation's articles of association.

The Code does not, however, permit a shareholder or group of shareholders to bring a derivative action on behalf of the corporation to redress injuries caused by Managing Board members' breach of their duties to the corporation.  It considers "the company [to be] an independent judicial entity whose legitimate interests are . . . distinct, and at times even divergent, from the interests of the company's shareholders." For this reason, Dutch jurists and legal scholars have concluded that "the law of the Netherlands does not recognise shareholder derivative suits that allow a shareholder of a company to sue on behalf of the company for an action that the company has acquired."[5]

---

[5] Professor Kroeze reports that only one lower court decision in the Netherlands has allowed an action resembling a shareholder derivative suit.  In 2000, the District Court of the Hague permitted a 50% shareholder and director of a closely held company to amend a claim in which he alleged harm to the value of his shares due to fraud by the defendant, the other 50% shareholder and director.  District Court of The Hague, Den Haag, 12 july 2000, JOR 2001, 90 (ann. MJK) (Neth.).  The plaintiff sought compensation for the company from the defendant due to his breach of duties against the company.  This lower court decision does not comport with the Supreme Court of the Netherlands' earlier holding in Poot/ABO, Hoge Raad der Nederlanden [HR] [Supreme Court of the Netherlands], 2 december 1994, NJ 288 (ann. Maeijir) (Neth.), that

[t]he property of the company is separate from that of its shareholders.  In the event that the company incurs a loss because a third party violates a contractual obligation or commits a tort vis-à-vis the company, only the company can bring an action against such a third party in order to seek compensation.

The Code does offer shareholders other means for addressing Managing and Supervisory Board members' malfeasance.  First, shareholders may vote to suspend or remove members of either board or even the entire Managing or Supervisory Board.[6]  Second, the shareholders may pass a simple majority resolution recommending that the company initiate a legal proceeding against one or more members of the Managing Board.  Leading Dutch scholars maintain that the company must follow such a directive.  Third, shareholders may apply in writing to the Enterprise Chamber of the Amsterdam Court of Appeal for an inquiry into the management and state of affairs of public companies like ABN which maintain corporate headquarters in the Netherlands.[7]  The Enterprise Chamber is authorized to make such an inquiry and take appropriate restorative action.

---

Id.

[6]  ABN's Articles of Association permit a two-thirds vote of the general meeting of shareholders to take such action, provided that the voted shares comprise at least half of the company's issued share capital.  The Supervisory Board may accomplish the same result by majority vote.

[7]  A shareholder may apply to the Enterprise Chamber if her collective holdings in the company either constitute at least 10% of the company's issued share capital, or have a minimum nominal value of EUR 225,000 or any lower percentage or amount provided in the company's articles of association.

F) Litigation in the SDNY and Plaintiff's Demand

Plaintiff filed her complaint on February 1, 2006.  The parties met for an initial pretrial conference on June 16, at which the Court instructed the plaintiff that if she did not make a demand upon ABN's Board by June 30 to pursue an action against the individual defendants, the plaintiff will have forgone any right to make such a demand.  The defendants were instructed to advise the Court of their response to any demand by July 28.

After this conference, plaintiff issued a letter on June 21, demanding the ABN Board of Directors[8] to "take appropriate legal action" against the individual defendants and "any other individuals or entities responsible for causing the substantial damage to ABN Amro" resulting from acts "constituting money laundering and which could facilitate terrorism and drug trafficking, in violation of both international and U.S. laws." Such damage included the payment of an $80 million fine to the United States Federal Reserve and Treasury Department, the payment of a $41.3 million fine in January 2006 to the United States Department of Housing and Urban Development for falsifying mortgage loan documents, criminal investigation by

---

[8] The plaintiff directed her June 2006 letter to the "ABN Board of Directors" without indicating whether her demand was intended for ABN's Managing or Supervisory Board.

the Department of Justice in the Southern District of New York,
and serious reputational harm.  The demand indicated that it was
"being made . . . solely at the behest of the United States
District Court for the Southern District of New York."

In a July 28 letter, counsel for the individual defendants
and ABN advised the Court that the ABN Board[9] would respond to
the plaintiff's demand in two stages.  First, the Board would
defer consideration of the demand until resolution of
defendants' then imminent motion to dismiss, which would raise
the issue of plaintiff's standing to bring a derivative suit.
Second, if the Court found standing, it would consider the
demand to determine whether to bring claims against any or all
of the individual defendants based on allegations of the
complaint and consistent with its business judgment.

Defendants moved to dismiss the instant action on September
15, 2006.  Discovery was stayed pending a decision on the motion
to dismiss.  The motion was fully submitted on November 29.


DISCUSSION

The defendants move to dismiss the complaint for failure to
state a claim under Rule 12(b)(6), Fed. R. Civ. P., on the
grounds that the plaintiff lacks standing to assert a derivative

---

[9] The July 2006 response communicated the position of the "ABN
Board of Directors" without specifying whether this position was
that of the ABN Managing or Supervisory Board.

claim on behalf of ABN and that there is no personal
jurisdiction.  In the alternative, the defendants move for a
stay of the action pending the ABN Managing Board's decision on
the plaintiff's demand that the corporation bring an action
against the named defendants.

I. Standing

The defendants claim that Seybold lacks standing to sue
derivatively on behalf of the corporation.[10]  "It is now well
established that in an action brought in a federal district
court on the basis of diversity of citizenship, questions of
whether or not a stockholder may bring a derivative action are
governed by state law."  Galef v. Alexander, 615 F.2d 51, 58 (2d
Cir. 1980); see also Hausman v. Buckley, 299 F.2d. 696, 700 (2d
Cir. 1962) (state law governs "the right of a stockholder of a
foreign corporation to participate in its management, i.e., to

---

[10] According to the Federal Rules of Civil Procedure, a
derivative plaintiff must be a shareholder at the time of the
transaction of which he complains, the action must not be a
collusive one to confer federal jurisdiction, and the complaint
must allege with particularity the efforts made to obtain the
desired action from the directors of the corporation or
comparable authority.  Fed. R. Civ. P. 23.1.  The defendants
claim that as a holder of ADRs, Seybold "does not possess any
ABN Amro shares, [and her] only recourse is to make a demand
upon [JPMorgan Chase Bank], as depository of the shares, to
bring a derivative action against ABN Amro."  For the reasons
detailed below, the plaintiff lacks standing on other grounds
and this issue need not be reached.

bring a lawsuit on the corporation's behalf."). "A federal court, sitting in diversity, must look to the choice-of-law rules of the state in which it sits . . . to resolve conflict-of-law questions," <u>Arochem Int'l, Inc. v. Buirkle</u>, 968 F.2d 266, 269-70 (2d Cir. 1992), including the "substantive question of [a] stockholder's right to sue," <u>Galef</u>, 615 F.2d at 58.

A. New York "Internal Affairs" Doctrine

Under New York law, courts generally look to the law of the state of incorporation to "adjudicate[e] a corporation's internal affairs, including questions as to the relationship between the corporation's shareholders and its directors." <u>Id.</u> This conflict of laws rule "recognizes that only one State should have the authority to regulate a corporation's internal affairs -- matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders -- because otherwise a corporation could be faced with conflicting demands." <u>Edgar v. MITE Corp.</u>, 457 U.S. 624, 645 (1982). The Second Circuit has articulated this so-called internal affairs choice-of-law doctrine, as follows:

> The right of a shareholder to object to conduct occurring in the operation of the corporate enterprise is determined by the law of the state of incorporation. This includes acts that are beyond the purposes of the corporation, acts which are prohibited either by the state of incorporation or by the state where the acts are to be performed and acts

which are alleged to be beyond the authority of the officers or directors.

Hausman, 299 F.2d at 702 (citation omitted).  The internal affairs doctrine is "well established and generally followed throughout this country."  Id. (emphasis supplied).  While the Second Circuit has noted that the New York Court of Appeals has "rejected any automatic application of the so-called internal affairs choice-of-law rule," Norlin Corp. v. Rooney, Pace Inc., 744 F.2d 255, 263 (2d Cir. 1984) (citing Greenspun v. Lindley, 36 N.Y.2d 473, 478 (1975)), on the specific question of shareholder standing to bring a derivative suit, the federal appeals court has itself applied the internal affairs doctrine, finding for example that the law of Venezuela barred a plaintiff from bringing a derivative action on behalf of a corporation chartered in that jurisdiction.  See Hausman, 299 F.2d at 702-06.

The parties agree that New York's internal affairs doctrine would apply Dutch law to this action.  Federal Rule of Civil Procedure 44.1 grants district courts wide latitude in resolving issues of foreign law: "The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.  The court's determination

shall be treated as a ruling on a question of law." Fed. R. Civ. P. 44.1.

The expert declaration of Professor Kroeze establishes, and plaintiff concedes, that the law of the Netherlands affords shareholders no right to bring a claim on behalf of a corporation against members of its Managing or Supervisory Boards for breach of duties owed to shareholders since, under Dutch law, members of these boards do not owe fiduciary duties directly to shareholders.  While Dutch law and the ABN Articles of Association do provide several avenues which, if followed, would grant a minority shareholder standing to bring a derivative suit on behalf of the corporation, the plaintiff has not pled that she has brought her suit through any of these means.  Seybold has not pleaded that a majority of ABN shareholders voted at a General Meeting to grant her authority to bring a derivative action.  Nor has she pleaded that the ABN Managing Board delegated its representative authority to her by designating her an "authorized signator[y]" with the power to bring an action on behalf of the corporation either independently or with a member of the Managing Board.  Finally, Seybold has not pointed to any provision of the ABN Articles of Association that provides an exception to these rules.  The plaintiff argues, nevertheless, that Dutch law should not apply

because of the public policy exception to New York's internal affairs doctrine.


B. Public Policy Exception

The Second Circuit in <u>Hausman</u>, 299 F.2d 696, considered a claim by a shareholder who, like the plaintiff in this action, argued that "even if New York courts adhere to the 'internal affairs' rule generally, they would refuse to apply it in this particular case for reasons of 'public policy.'"  <u>Id.</u> at 705. As laid out in <u>Hausman</u>, application of the public policy exception requires a showing that the foreign law "is immoral or fundamentally unjust" or "outrages the public policy of New York."  <u>Id.</u> (citation omitted).  In applying these concepts, however, a court should be wary of substituting its own "notions of 'public policy' for well-established New York conflict of laws principles."  <u>Id.</u> at 706.

Plaintiff's argument for a public policy exception to New York's internal affairs doctrine is unavailing.  As was true in <u>Hausman</u>, the foreign law is different from New York law, but is neither "immoral" nor "fundamentally unjust."  "New York courts are not so provincial as to say that every solution of a problem is wrong merely because it may differ from its own."  <u>Id.</u>

Dutch law provides a variety of means for checking malfeasance by members of the Managing and Supervisory Boards of

companies incorporated in the Netherlands.  Like the Venezuelan
law reviewed in Hausman, Dutch law vests primary control of
corporate affairs in the directors, and creates a fiduciary duty
running from the directors to the corporation.  See id. at 705.
While ABN shareholders generally lack the power to sue
derivatively on behalf of the company, they have several means
to influence corporate governance.  Most importantly, they may
exercise their vote to suspend or remove board members as set
forth in the ABN Articles of Association.  The shareholders as a
group may also, by simple majority resolution by the general
meeting of the shareholders, ask the company to initiate a legal
proceeding against members of the Managing Board -- a
recommendation that leading Dutch scholars believe must be
followed by the company.  Finally, even minority shareholders
with certain threshold holdings may request an inquiry into the
management of a corporation by writing to the Enterprise Chamber
of the Amsterdam Court of Appeal.  While Dutch law provides
different avenues for shareholders to address malfeasance by
members of corporate Managing and Supervisory Boards than does
New York law, there is no reason to conclude that the Dutch
system is immoral or fundamentally unjust.

      Plaintiff claims that the application of Dutch law will
contravene important New York and United States policy and
legislation that financial institutions not assist terrorist

states and entities or launder money.  She argues that an
exception to the internal affairs doctrine is warranted to
protect the safety of New York's citizens and financial markets,
particularly from countries and entities that engage in
terrorist activities and are developing nuclear capability.[11]

Seybold has not shown that the public policy of the
Netherlands is less committed to the defeat of terrorism or to
the security of financial markets than the public policies of
New York.  In any event, Seybold is offering the wrong paradigm.
The public policy at issue is New York's policy "involving the
right of stockholders to participate in the management of a
corporation though the intervention of the courts."  Hausman,
299 F.2d at 705.  For the reasons already explained, Seybold has
not shown that a public policy exception should be recognized

---

[11] In lieu of the internal affairs doctrine, plaintiff calls for
the application of an "interest analysis," which would find that
New York holds a "great[er] concern with the specific issue
raised in the litigation," Fin. One Pub. Co. Ltd. v. Lehman
Bros. Special Fin., Inc., 414 F.3d 325, 337 (2d Cir. 2005)
(citation omitted), than the Netherlands and would apply New
York law to find shareholder standing to bring a derivative
suit.  An interest analysis, however, does not assist the
plaintiff, but would also apply Netherlands law.  The
Netherlands has a significant interest in litigation seeking to
redress alleged malfeasance by board members of companies
incorporated under its law and headquartered on its territory.
It has made this interest clear, for example, by permitting a
shareholder with threshold holdings to apply to the Enterprise
Chamber of the Amsterdam Court of Appeal for an inquiry into the
management of public corporations headquartered in the
Netherlands.

with regard to the application of the New York internal affairs rule on the question of shareholder standing to bring a derivative suit.[12]

CONCLUSION

The defendants' motion to dismiss is granted on the ground that plaintiff lacks standing to bring a derivative suit on behalf of ABN.  The defendants' motion to dismiss for lack of personal jurisdiction and their request to stay the action

---

[12] The plaintiff cites only two cases to support its argument for a public policy exception, neither of which treated a conflict of law on the issue of shareholder derivative standing.  See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 171, 193 & nn.215-16 (S.D.N.Y. 2006) (direct claims by investor for breach of fiduciary duties and for aiding and abetting fraud and the breach of fiduciary duties against former directors and a former administrator of hedge funds based in the British Virgin Islands); Stephens v. Nat'l Distillers & Chem. Corp., No. 91 Civ. 2901 (JSM), 1996 WL 271789, at *1, 5 (S.D.N.Y. May 21, 1996) (indemnification claim by the Kentucky state insurance commissioner against former officers of an insolvent reinsurance company).  Although this Court departed from the internal affairs doctrine in Nat'l Distillers, it also concluded that there was no conflict on the point of law at issue in that case -- the scope of officer liability for breach of fiduciary duties -- because "the applicable standards . . . would not differ" under Kentucky and New York law.  Nat'l Distillers, 1996 WL 271789, at *5 n.5.

pending the ABN Managing Board's consideration of plaintiff's

demand are both moot.   The Clerk of Court shall close this case.

SO ORDERED:

Dated:    New York, New York
          March 12, 2007

DENISE COTE
United States District Judge

22